UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL ALLISON,<br>ADAM McCONNELL,<br><br>    Plaintiff,<br><br>v.<br><br>BIRMINGHAM, CITY OF, THE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 2:19-cv-244-ACA |

## MEMORANDUM OPINION

Before the court is Defendant City of Birmingham's ("the City") motion for summary judgment. (Doc. 23). Plaintiffs Michael Allison and Adam McConnell, both white police officers, allege that the City discriminated against them by removing them from their assigned beats and replacing them with African-American officers. (Doc. 14 at 3 ¶ 15). They assert that the reassignment violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m), and the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. (*Id.* at 4).

The court **WILL GRANT** the City's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of the City and against Plaintiffs because Plaintiffs have failed to present evidence from which a reasonable jury could find in their favor.

1

## I. BACKGROUND

On a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

The City's North Police Precinct is typically divided into four districts, which are each divided into several patrol beats. (Doc. 22-1 at 1). The districts are patrolled by a combination of beat and utility patrol officers. (*Id.*). Beat officers are assigned to patrol a specific beat; utility officers patrol various beats within the precinct during each shift. (*Id.*). There is no difference in pay, benefits, or job duties between the two roles. (Doc. 22-1 at 3). At the time relevant to this case, Officers McConnell and Allison were beat patrol officers assigned to the North Precinct. (Doc. 29-1 at 2 ¶ 1; Doc. 29-2 at 2 ¶ 1).

In February 2017, when Lieutenant Donald Gary became Unit Commander of the North Precinct, there were only three sergeants assigned to the precinct, so the precinct was divided into three districts rather than the usual four. (Doc. 22-1 at 2–3). When Lt. Gary assumed command, he met with each North Precinct officer, including Officers McConnell and Allison, to communicate his performance expectations. (Doc. 22-1 at 4). He expected officers to complete monthly reports

detailing their activity, including the number of traffic stops, citations, and arrests made by the officer. (Doc. 22-1 at 4).

On June 9, 2017, Officer Allison and another patrol officer, Officer Phillips, responded to a disturbance call in the Fountain Heights area, a neighborhood within Officer Allison's beat. (Doc. 22-1 at 5; Doc. 29-1 at 2 ¶ 9). The call resulted in Officer Allison and Officer Phillips arresting Bonderia Lyons for disorderly conduct. (Doc. 22-1 at 5). During her confrontation with the officers, Ms. Lyons complained that her neighborhood was being treated unfairly by the "white officers" patrolling it. (*Id.*). She demanded to speak to the arresting officers' supervisors. (*Id.*).

The next day, Ms. Lyons attended a Fountain Heights Neighborhood meeting. (Doc. 22-1 at 6; Doc. 29-1 at 2 ¶ 14). Lt. Gary, several police supervisors, and Officer Phillips also attended the meeting. (Doc. 22-1 at 6). During the meeting, an altercation arose between Officer Phillips and Roderick Foster, a male friend of Ms. Lyons. (*Id.*; Doc. 29-1 at 2 ¶ 15). Mr. Foster drew a gun during the confrontation, and Officer Phillips arrested him for attempted murder. (Doc. 22-1 at 6). Officer McConnell responded to the scene as backup, but by the time he arrived other officers had already secured the scene. (Doc. 22-1 at 6; Doc. 29-1 at 2 ¶ 15–16).

After the meeting, but still in the presence of the officers, Ms. Lyons repeated her complaint that the officers patrolling her neighborhood were treating her and her

neighbors unfairly because the officers were white, and the neighborhood was predominantly black. (Doc. 29-1 at 2 ¶ 18–19).

Roughly two weeks after the neighborhood meeting, Lt. Gary reassigned several officers, including Officers McConnell and Allison. (Doc. 22-1 at 4). Lt. Gary gives two reasons for his decision to reassign some of the officers under his command: first, his review of the officers productivity during his first five months led to the determination that reassignments were "needed to meet the needs of the community" and "better serve the citizens"; second, the Birmingham Police Department assigned a new sergeant to the North Precinct, allowing him to re-establish a fourth district. (Doc. 22-1 at 4, 7).

Alleging that Lt. Gary's decision to reassign them from beat patrol to utility patrol was racially motivated, Officers McConnell and Allison filed this suit. (Doc. 14 at 4 ¶ 23)

## II.     DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Hamilton*, 680 F.3d at 1318.

Plaintiffs bring two claims of racial discrimination, one under Title VII of the Civil Rights Act and one under the Equal Protection Clause of the Fourteenth

Amendment through 42 U.S.C. § 1983.  However, even when viewed in the light most favorable to Plaintiffs, the evidence here is insufficient to survive summary judgment.  Plaintiffs have not established a prima facie case under the *McDonnell Douglas* test, and they have also failed to present evidence of a convincing mosaic of circumstantial evidence.  Further, Plaintiffs have failed to show any evidence that could lead a reasonable jury to find that the City has either an official policy or unofficial custom of reassigning officers based on race.  Accordingly, the court **WILL GRANT** summary judgment in favor of the City and against Plaintiffs.

    1.    <u>Title VII Claim</u>

Plaintiffs point to Lt. Gary's decision to reassign them from beat to utility patrol as the sole discriminatory decision.[1]  The City responds by arguing that Plaintiffs' Title VII claim fails because (1) reassignment from beat to utility patrol is not an adverse employment action; (2) Plaintiffs have failed to present evidence that their reassignment was based on race; and (3) Plaintiffs have failed to present evidence that the City's legitimate, non-discriminatory reasons for reassigning Plaintiffs were pretextual.  (Doc. 24 at 11–13, 19; Doc. 31 at 5–6).  The court does

---

[1] In the complaint, Plaintiffs also allege that the City removed their Field Training Officer ("FTO") designation, a title that comes with both increased responsibility and a pay increase. (Doc. 14 at 3 ¶ 17).  On summary judgment, however, Plaintiffs concede that Officer McConnell was never an FTO, and Officer Allison only became an FTO after his reassignment. (Doc. 29 at 22).  Plaintiffs muse that "if McConnell's designation was denied or Allison's was delayed as a part of these events, an adverse employment action would be demonstrated," but have not offered any evidence to that effect. (*Id.* at 23).  Accordingly, the court will limit its analysis to Plaintiffs' claim that their reassignment violated Title VII.

not need to address whether reassignment from beat to utility patrol is an adverse employment action because Plaintiffs have not presented enough evidence of discrimination to survive summary judgment.

Generally, where a plaintiff bases a Title VII claim of race discrimination on circumstantial evidence, the court applies the *McDonnell Douglas* framework. *See, e.g.*, *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). In this case, however, Plaintiffs concede that they cannot make the initial showing required under the *McDonnell Douglas* test because they have not identified similarly situated comparators. (Doc. 29 at 22). Instead, they rely on the test set out in *Smith v. Lockheed-Martin Corp.*, in which the Eleventh Circuit held that a plaintiff may survive summary judgment if he "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks and alteration omitted).

Circumstantial evidence of discriminatory intent includes "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Ed. of Chicago*, 637 F.3d 729, 733–34 (7th Cir. 2011)) (quotations omitted)

(alterations accepted). In *Smith*, the plaintiff offered "compelling evidence" of race-based discrimination, including "numerous incidents where the discipline of white employees varied considerably from that of black employees, and a discipline matrix created by the employer that tracked the discipline and race of employees." *Connelly v. Metro. Atlanta Rapid Transit Auth.*, 764 F.3d 1358, 1364 (11th Cir. 2014) (quotations omitted).

Here, the evidence is not compelling. Plaintiffs' claim relies on statements made by Ms. Lyons, a private citizen. (Doc. 29-1 at 2 ¶ 18). Plaintiffs argue that because Lt. Gary did not "correct" Ms. Lyons when she complained about white officers patrolling her neighborhood, he "tolerated the making of these statements." (*Id.* at 2 ¶ 19). Plaintiffs also allege that the timing of their reassignments, roughly two weeks after Ms. Lyons' statements, is "suspicious." (Doc. 29 at 27–28). Finally, Plaintiffs argue that a "jury could reasonably infer that Gary felt inclined to placate Lyons and avoid the potential public relations or lawsuit disaster that she posed." (Doc. 29 at 30). But "[a]n inference[ ] is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact." *Smith*, 644 F.3d at 1328 n.25 (quotation marks and second alteration omitted). Here, there is insufficient evidence for a reasonable factfinder to conclude that Plaintiffs have presented a convincing mosaic of circumstantial evidence of discrimination.

Moreover, the City presented evidence of legitimate, non-discriminatory reasons for Plaintiffs' reassignment, and Plaintiffs offer no evidence of pretext. Lt. Gary testified that his reassignment decisions were based "on a review of officers' productivity and neighborhood involvement" over the course of five months. (Doc. 22-1 at 4). Lt. Gary "noted multiple times on [Officer McConnell's] reports that he needed . . . to do more on his beat." (*Id.* at 5, 11–20). Then, when a new sergeant was assigned to the precinct, Lt. Gary created a fourth district and made reassignments to cover the new district and "better serve the citizens" of the North Precinct. (*Id.* at 4). Because Plaintiffs failed to show that these reasons are not credible, the City is entitled to summary judgment.

Plaintiffs have failed to provide evidence of discriminatory intent or pretext and thus have not presented evidence from which a reasonable factfinder could find in their favor. Accordingly, the court **WILL GRANT** summary judgment in favor of the City and against Plaintiffs on their Title VII claim of race discrimination.

2.   Section 1983 Claim

Count two asserts that the City violated the Equal Protection Clause of the Fourteenth Amendment and is brought pursuant to 42 U.S.C. § 1983. Plaintiffs allege that the City denied them the "right to be free from intentional racial discrimination." (Doc. 14 at 5). Like their Title VII claim, Plaintiffs' § 1983 claim cannot survive summary judgment.

First, for the same reason that their Title VII claim fails, Plaintiffs' § 1983 claim must also fail. *See Abel v. Dubberly*, 210 F.3d 1334, 1339 n.3 (11th Cir. 2000) (holding that the same analysis applies to Title VII and § 1983 claims "when the two claims arise from the same conduct and constitute parallel remedies"). The same allegedly discriminatory conduct, Lt. Gary's reassignment decision, animates both of Plaintiffs' claims. (Doc. 14 at 3–4). Plaintiffs have not satisfied the *McDonnell Douglas* test and have not presented a convincing mosaic of circumstantial evidence. Thus, they have failed to produce sufficient evidence of intentional discrimination, a prerequisite to their equal protection claim.

But even if Lt. Gary reassigned Plaintiffs because of their race, Plaintiffs' § 1983 claim must still fail. "The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001). Instead, to establish a municipality's liability under § 1983, a plaintiff must "identify either (1) an officially promulgated . . . policy or (2) an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Here, Plaintiffs have presented no evidence that Lt. Gary was acting in accordance with a custom or policy of discrimination. It is undisputed that the City does not have an official policy of discrimination. (Doc. 22-3). And Plaintiffs have

9

not presented evidence of an unofficial custom or practice of discrimination because nothing in Plaintiffs' affidavits provide evidence of repeated, discriminatory acts by a final policymaker for the city. (*See* Docs. 29-1, 29-2).

Plaintiffs argue that "Lt. Gary possessed the final policymaking authority over deployment of police officers in the North Precinct." (Doc. 29 at 32). But the undisputed evidence shows that "[o]nly the Mayor of the City of Birmingham and the Chief of Police can create and implement policies for the Birmingham Police Department." (Doc. 30-1 at 4). Lt. Gary did not have the "final authority to establish municipal policy," and "[t]he fact that a particular official . . . has discretion in the exercise of particular functions does not . . . give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). Lt. Gary's discretionary decision to reassign Plaintiffs cannot impose liability on the City. Accordingly, the court **WILL GRANT** summary judgment in favor of the City and against Plaintiffs on their § 1983 claim.

### III. CONCLUSION

The court **WILL GRANT** the City's motion for summary judgment and **WILL ENTER SUMMARY JUDGMENT** in favor of the City and against

Plaintiffs on all of their claims. The court will enter a separate order and final judgment consistent with this opinion.

**DONE** and **ORDERED** this January 8, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE